IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERNEST HUBBARD, ) | |
| ) | |
| Petitioner, ) | 09 C 6772 |
| ) | |
| v. ) | |
| ) | |
| DAVE REDNOUR, Warden, ) | Hon. Charles R. Norgle |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

**OPINION AND ORDER**

CHARLES R. NORGLE, District Judge

Before the Court is Petitioner Ernest Hubbard's Petition for Writ of Habeas Corpus – Person in State Custody, filed pursuant to 28 U.S.C. § 2254. For the following reasons, the Petition is denied.

## I. BACKGROUND

### A. Facts

On September 15, 1999, Petitioner Ernest Hubbard ("Hubbard") was charged by indictment of first degree murder and intentional homicide of an unborn child. Illinois v. Hubbard, No. 2-03-94, slip op. 1 (Ill. App. Ct. filed Sept. 28, 2004). The indictment alleged that on July 13, 1999, Hubbard poured gasoline on his pregnant wife, Trijuana Hubbard ("Trijuana"), and set her on fire, causing her and her unborn child to die. Id. at 2. The Circuit Court of DuPage County conducted a jury trial. Id. At trial, Officer Kelly Bell ("Officer Bell") of the Glendale Heights Police Department testified that at about 4 a.m. on July 13, 1999, she

responded to an apartment fire in Glendale Heights. Id. Officer Bell observed Hubbard and Trijuana in the third floor hallway of the apartment building; both were badly burned. Id. Before Trijuana was taken from the scene in an ambulance, she told Officer Bell that Hubbard punched and choked her, poured gasoline on her, and set her on fire. Id. Officer Bell followed the ambulance to Glen Oaks Medical Center in Glendale Heights and spoke to Hubbard. Id. Hubbard told Officer Bell that he poured gasoline on Trijuana and himself and lit both of them on fire. Id. He further stated that he learned that Trijuana was having an affair and that he had "lost control." Id. He admitted that he choked Trijuana, but denied that he hit her. Id.

Officer Mario Mineo ("Officer Mineo") testified that he arrived at the scene just after Officer Bell. Id. Officer Mineo had smelled gasoline and observed that both Hubbard and Trijuana were severely burned. Id. When he asked Hubbard what happened he replied, "We got stupid." Id. In the emergency room of the Glen Oaks Medical Center, Officer Mineo again asked Hubbard what had happened. Id. Although Hubbard appeared to be in great pain, he was conscious and coherent. Id. at 3. Hubbard responded that Trijuana's cheating had been "driving him crazy" and that he and Trijuana had "decided to end it." Id. He further stated that he told his and Trijuana's children to go outside. Id. He told Officer Mineo that he then poured gasoline on both himself and Trijana. Id. He said that Trijuana stated, "I can't take this no more, so why don't you just do it." Id. In response, Hubbard said he lit a match and threw it at Trijuana; he stated that he was trying to kill himself and Trijuana. Id.

Officer Richard Luethy ("Officer Luethy") testified that he arrived at the scene after Officers Bell and Mineo. Id. In response to Officer Luethy's questioning, Hubbard stated that the gasoline he brought into the apartment started the fire. Id. While Officer Luethy was

speaking to Hubbard, Trijuana stated, "He burned me." Id. Hubbard retorted, "She cheated on me and said our life was over." Id.

Yolanda Studway ("Studway") testified that she lived in the same apartment building as Hubbard and Trijuana in July 1999. Id. On July 12, 1999, she was talking with Trijuana on the telephone when Hubbard came to her door. Id. Studway motioned to him to be quiet and handed him the phone; he heard Trijuana talking about another man. Id. at 3-4. He then wrote on a piece of paper, "She's going down" and left. Id. at 4.

Sergeant Kenneth Graff[1] ("Sergeant Graff") testified that he interviewed Hubbard at the Rehabilitation Institute of Chicago on August 17, 1999. Id. Sergeant Graff observed that Hubbard appeared lucid, and that he was cordial, cooperative, and responded appropriately to his questions. Id. At the beginning of the interview, Sergeant Graff asked Hubbard if he knew what medications he was taking. Id. at 5. Hubbard responded, "It's called uh . . . I just recently had a shot that is called Demerol with something. It's very strong." Id. Sergeant Graff said "very strong?" Id. Hubbard replied, "Ooh yeah." Id. The interview had been recorded and was played for the jury. Id. at 4.

During the interview, Hubbard stated that he learned about Trijuana's affair from her friend Yolanda Studway about a month before the fire. Id. He was hurt because several years earlier Trijuana had an affair and became pregnant with Tiffany while he was serving in the Army during the Persian Gulf War. Id. After learning about the recent affair, Hubbard bought a

---

[1] The Illinois Appellate Court spelled his name "Graf," Hubbard, No. 2-03-94, at 4, while the transcript from the Circuit Court of DuPage County spelled his name "Graff." See, e.g., Transcript of Record at C1107, Illinois v. Hubbard, No. 99-2142 (Cir. Ct. DuPage Cnty. July 11, 2006).

3

tape recorder and placed it behind their bed. Id. He recorded Trijuana's conversation with her mother about the affair and a pager message from a man named Jim. Id.

On July 12, 1999, Hubbard visited Studway's apartment and listened in on Trijuana's phone conversation about her plan to "hang" with another man. Id. That night, Hubbard confronted Trijuana and argued with her about the cheating. Id. According to Hubbard, the couple then agreed on a plan to commit suicide. Id.

Initially, Hubbard stated that he poured gas on himself and lit a match and threw it on himself, while Trijuana did the same to herself. Id. He later changed his story and admitted that he poured the gas on Trijuana and lit the match and threw it on her. Id. He explained that he asked what the other man's name was and for his pager number, which Trijuana refused to tell him. Id. Instead, she stated, "Do it. Let's get this over with." Id. Hubbard admitted that this statement was more a dare than a request. Id. at 4-5. He acknowledged that Trijuana did not want to die and stated, "She ended up being dead because I killed her." Id. at 5. Hubbard admitted that he had thought about the gasoline for about a day before the fire and that he knew that Trijuana was pregnant. Id. He denied, however, that he planned on killing Trijuana or her unborn child. Id.

Dr. Thamrong Chira testified that he performed Trijuana's autopsy. Hubbard, No. 2-03-94, at 5. Trijuana had burns on seventy-six percent of her body and suffered from smoke inhalation. Id. During her hospitalization, Trijuana suffered a miscarriage as an acute response to her injuries. Illinois v. Hubbard, No. 2-05-911 & 2-06-349 cons., slip op. 6 (Ill. App. Ct. filed Sept. 10, 2007). Trijuana developed fatal cardiac arrhythmia and died on July 24, 1999. Id. Based on a reasonable degree of medical certainty, Dr. Chira testified that Trijuana's death was

4

caused by thermal burns, with smoke inhalation as a contributing factor. Hubbard, No. 2-03-94, at 5.

Hubbard is incarcerated at the Menard Correctional Center in Menard, Illinois, where he is in the custody of Warden Dave Rednour. On September 28, 2004, the Illinois Appellate Court affirmed Hubbard's conviction for the first degree murder of his pregnant wife, but remanded to the trial court to allow him to file a motion to reconsider his fifty year sentence. Id. at 10.

## B. Procedural History

### 1. State Court Proceedings

On September 15, 1999, Hubbard was charged by indictment with four counts of first degree murder and five counts of intentional homicide of an unborn child. Hubbard, No. 2-05-911 & 2-06-349 cons., at 1. In May 2000, Hubbard's attorney moved to suppress statements Hubbard made at the scene of the crime and at the hospital on July 13, 1999, and at the Rehabilitation Institute of Chicago on August 17, 1999. Id. at 2. In December 2000, Hubbard's new attorneys announced that they would not proceed on the motion to suppress. Id. The jury found Hubbard guilty of first-degree murder, accompanied by exceptionally brutal and heinous behavior, indicative of wanton cruelty. Hubbard, No. 2-03-94, at 5. The jury also found him guilty of involuntary manslaughter of an unborn child, a lesser offense of intentional homicide of an unborn child. Id. The State dismissed the charge relating to the unborn child because it believed that the two guilty verdicts were inconsistent. Id. at 5-6. Hubbard was sentenced to fifty years of imprisonment. Id. at 1.

On direct appeal, Hubbard raised four claims: (1) ineffective assistance of trial counsel for failing to seek suppression of tape-recorded statements he made to Sergeant Graff while

under the influence of medication at the Rehabilitation Institute of Chicago; (2) that the trial court erred in allowing autopsy photographs to go back to the jury over defense objection; (3) that the trial court erred in denying his request to bifurcate the trial so that the jury would receive evidence of brutal and heinous behavior only after it rendered its finding of guilt; and (4) that the trial court failed to properly admonish him, in accordance with Supreme Court Rule 605(a)(3), that he must file a motion to reconsider sentence in order to preserve any challenges concerning his sentence. Brief & Argument for Defendant-Appellant at 23, 30-31, 35, Illinois v. Hubbard, No. 2-03-94 (Ill. App. Ct. filed Sept. 28, 2004); see also Hubbard, No. 2-03-94, at 1, 6, 8-9. The Appellate Court remanded the cause based on the trial court's failure to admonish Hubbard pursuant to Supreme Court Rule 605(a)(3). Hubbard, No. 2-03-94, at 9-10. The court otherwise affirmed the judgement of conviction. Id. at 10.

Hubbard filed a Petition for Leave to Appeal ("PLA") to the Illinois Supreme Court, asserting that (1) the Appellate Court erred when it held that Hubbard did not establish prejudice under Strickland v. Washington, 466 U.S. 668 (1984); (2) trial counsel was ineffective for failing to suppress his statement to responding officers and his tape-recorded confession to Sergeant Graff while under the influence of medication at the Rehabilitation Institute of Chicago; (3) that his statements to responding officers were inadmissable because he was not advised of his Miranda rights; and (4) trial counsel was ineffective for failing to object on hearsay grounds to Officer Bell's testimony about what the victim stated to him. Petition for Leave to Appeal at 24-25, Illinois v. Hubbard, No. 100195 (Ill. May 25, 2005). On May 25, 2005, the Illinois Supreme Court denied the PLA. Illinois v. Hubbard, No. 100195 (Ill. May 25, 2005).

On November 12, 2004, the trial court heard and denied Hubbard's motion to reconsider

6

his sentence. Illinois v. Hubbard, No. 2-4-1150, slip. op 2 (Ill. App. Ct. filed July 20, 2005). On July 20, 2005, the Appellate Court reversed the order, holding that the trial court did not have jurisdiction to hear Hubbard's motion because the court had not yet filed its mandate. Id. Hubbard subsequently filed another motion to reconsider his sentence, which was denied by the trial court on September 2, 2005. Hubbard, No. 2-05-911 & 2-06-349 cons., at 9.

On September 29, 2005, Hubbard filed a pro se post-conviction petition in the trial court, asserting (1) ineffective assistance of appellate counsel; (2) denial of his Fifth and Fourteenth Amendment rights because his involuntary confession was admitted as evidence without a prior hearing; (3) failure of the trial court to grant him a hearing "based on police-obtained alleged confessions and prosecution witness statements"; and (4) ineffective assistance of trial counsel for failing to file a motion to suppress statements regarding Hubbard's confessions to Officers Luethy, Mineo, and Bell. Petition for Post-Conviction Relief, Illinois v. Hubbard, No. 99-2142 (Cir. Ct. DuPage Cnty. Sept. 30, 2005). The court, however, only addressed two issues: (1) whether appellate counsel was ineffective for failing to file a motion to suppress all statements to responding officers at the scene and hospital, and to Sergeant Graff at the Rehabilitation Institute of Chicago; and (2) whether Hubbard's constitutional rights were violated when his statements were admitted at trial without being the subject of a motion to suppress. Illinois v. Hubbard, No. 99-2142 (Cir. Ct. DuPage Cnty. Sept. 30, 2005). The court found that the issue of ineffective assistance of trial counsel for failing to seek suppression of the statements made at the Rehabilitation Institute of Chicago was addressed by the Appellate Court and was therefore barred by res judicata. Id. Further, the court found that the issue of trial counsel's failure to seek suppression of Hubbard's other statements was waived because it could have been

7

raised on direct appeal and was not. Id. The court also found that appellate counsel's decision on appeal to raise the issue of trial counsel's ineffective assistance for failure to seek suppression on all of Hubbard's statements was "an exercise of judgment." Id. The court stated that Hubbard failed to show that this was objectively unreasonable and that, but for the failure to raise the other issues, his sentence or conviction would have been reversed. Id. Ultimately, the court found that the petition was "frivolous and . . . patently without merit." Id. Hubbard's post-conviction petition was dismissed on September 30, 2005. Id.

The Appellate Court consolidated Hubbard's appeal from the denial of his renewed motion to reconsider his sentence with his post-conviction appeal. Hubbard, No. 2-05-911 & 2-06-349 cons., at 1-2. On appeal, Hubbard argued that (1) his fifty year sentence was excessive; and (2) the trial court erred in summarily dismissing his post-conviction petition because it states the gist of a meritorious claim of both ineffective assistance of trial and appellate counsel. Brief & Argument for Defendant-Appellant at 18, 24-25, Illinois v. Hubbard, No. 2-05-911 & 2-06-349 cons. (Ill. App. Ct. filed Sept. 10, 2007). On September 10, 2007, the Appellate Court affirmed the judgement of the trial court. Hubbard, No. 2-05-911 & 2-06-349 cons., at 1-2, 12, 17.

Hubbard filed a PLA with the Illinois Supreme Court, raising one claim: whether a pro se post-conviction petition alleging ineffective assistance of counsel must demonstrate prejudice to establish the gist of a constitutional claim in order to advance to the second stage of post-conviction review. Petition for Leave to Appeal for Defendant-Petitioner at 8, Illinois v. Hubbard, No. 105464 (Ill. Nov. 9, 2009). On November 9, 2009, the Illinois Supreme Court denied Hubbard's PLA, but issued a supervisory order directing the Appellate Court to vacate its

judgment and reconsider it in light of People v. Hodges, 912 N.E.2d 1204 (Ill. 2009), to determine whether a different result was warranted. Illinois v. Hubbard, No. 105464 (Ill. Nov. 9, 2009). On March 10, 2010, the Appellate Court issued a new order that again affirmed the post-conviction petition dismissal. Illinois v. Hubbard, Nos. 2-5-911 & 2-6-349 cons., slip op. 18-20 (Ill. App. Ct. filed Mar. 10, 2010) [hereinafter Hubbard II].

In response, Hubbard filed a PLA with the Illinois Supreme Court, asserting that (1) he has a "Federal, State and statutory right to object to the use of a confession and to have a hearing on the issue of voluntariness. Petitioner wanted the hearing and never had the hearing due to the appointed attorneys ineffectiveness"; and (2) the Appellate Court failed to consider the issues in light of Hodges as ordered by the Illinois Supreme Court. Pet. for Leave to Appeal Summ. J. at 2, Illinois v. Hubbard, No. 110172 (Ill. May 26, 2010). The Illinois Supreme Court denied Hubbard's second PLA on May 26, 2010. Illinois v. Hubbard, No. 110172 (Ill. May 26, 2010).

On August 4, 2008, Hubbard filed a mandamus complaint in the trial court, alleging that he "will suffer irreparable damages and be subjected to further miscarriage of justice" because the trial judge refused his request to determine the voluntariness of his statements at a hearing. Pet. of Mandamus, Hubbard v. Creswell, No. 2008MR001210 (Cir. Ct. DuPage Cnty. filed Aug. 4, 2008). On January 7, 2009, the complaint was dismissed for want of prosecution. Dismissal For Want of Prosecution, Hubbard v. Creswell, No. 2008MR001210 (Cir. Ct. Jan. 7, 2009). Hubbard did not appeal this dismissal. Answer to Pet'r's Pet. for a Writ of Habeas Corpus 6.

### 2. *Proceedings Before the District Court*

Hubbard filed his Petition for Writ of Habeas Corpus – Person in State Custody pursuant to 28 U.S.C. § 2254 on October 27, 2009. Hubbard asserts the following grounds for relief:

9

(1) violation of the privilege against self incrimination; (2) ineffective assistance of counsel at trial; (3) the State's use of an inadmissable, involuntary confession at trial without granting an evidentiary hearing; and (4) denial of an evidentiary hearing on the voluntariness of his confession.

Respondent filed his Answer to Hubbard's Petition on September 10, 2010, along with the state court record. Hubbard's Petition is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

Hubbard's Petition is governed by 28 U.S.C. § 2254(d), which sets a high hurdle for habeas relief. See, e.g., Cullen v. Pinholster, No. 09-1088, 2011 WL 1225705, at *8 (Apr. 4, 2011). This statute states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either incorrectly laid out governing United States Supreme Court precedent, or, having identified the correct rule of law, decided a case differently than a materially factually indistinguishable Supreme Court case." Sutherland v. Gaetz, 581 F.3d 614, 616 (7th Cir. 2009) (citing Calloway v. Montgomery, 512 F.3d 940, 943 (7th Cir. 2008)). A state court's decision is

an "unreasonable application" of clearly established Supreme Court law "if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." Griffin v. Pierce, 622 F.3d 831, 841 (7th Cir. 2010) (quoting Goudy v. Basinger, 604 F.3d 394, 399 (7th Cir.2010)). In order for a state court decision to be considered "unreasonable" under this standard it must be more than incorrect, it must lie "well outside the boundaries of permissible differences of opinion." Hardaway v. Young, 302 F.3d 757, 762 (7th Cir. 2002); see also Schultz v. Page, 313 F.3d 1010, 1015 (7th Cir. 2002) ("The state court decision is reasonable if it is minimally consistent with the facts and circumstances of the case."). Moreover, a state court decision involves an unreasonable determination of the facts "if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." Griffin, 622 F.3d at 841 (quoting Goudy, 604 F.3d at 399).

Hubbard contends that he is entitled to relief because the state court adjudication of his claims was based on an unreasonable determination of the facts and an unreasonable application of Strickland. In reviewing Hubbard's claims, the Court examines the decision of the last state court to rule on the merits of his petition. See Griffin, 622 F.3d at 710 (citing Ebert v. Gaetz, 610 F.3d 404, 411 (7th Cir. 2010)). The state court's factual findings are presumed correct unless Hubbard rebuts the presumption with clear and convincing evidence. See id.

Before reviewing the Illinois courts' decisions, however, the Court must determine whether Hubbard fairly presented his federal claims to the state courts. Section 2254(b) provides that "[a]n application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1).

"Implicit in the exhaustion requirement is the related condition which requires petitioners to 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" Johnson v. Pollard, 559 F.3d 746, 751-52 (7th Cir. 2009) (alteration in original) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)). In order to satisfy the exhaustion requirement, a habeas petitioner must have "properly presented his or her claims through one 'complete round of the State's established appellate review process.'" Woodford v. Ngo, 548 U.S. 81, 92 (2006) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).

"One complete round" in Illinois means that a habeas petitioner must have "directly appealed to the Illinois Appellate Court and presented the claim in a petition for leave to appeal to the Illinois Supreme Court." Guest v. McCann, 474 F.3d 926, 930 (7th Cir. 2007) (citing O'Sullivan, 526 U.S. at 845). This rule applies with equal force in post-conviction proceedings. Pole v. Randolph, 570 F.3d 922, 934 (7th Cir. 2009) (citations omitted). "Adequate presentation of a claim to the state courts requires the petitioner to present both the operative facts and the legal principles that control each claim." Id. at 934-35 (citing Stevens v. McBride, 489 F.3d 883, 894 (7th Cir. 2007)). Thus, a habeas petitioner procedurally defaults, or waives, any federal claims, when he "has not properly asserted his claims at each level of review and it is clear that the state courts would now hold those claims procedurally barred." Byers v. Basinger, 610 F.3d 980, 985 (7th Cir. 2010).

A federal court may excuse a § 2254 petitioner's procedural default only where the "petitioner can show either cause for the default and actual prejudice as a result of the alleged violation of federal law, or can demonstrate that failure to consider the claim will result in a

fundamental miscarriage of justice." Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010). "Cause" is defined as "an objective factor, external to the defense, that impeded the defendant's efforts to raise the claim in an earlier proceeding." Id. "Prejudice" means "an error which so infected the entire trial that the resulting conviction violates due process." Id. The "fundamental miscarriage of justice" exception requires a showing of actual innocence. Id. at 388-89 (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)).

Finally, federal habeas courts cannot review claims that the state court has disposed of on state law grounds. Smith, 598 F.3d at 382; see also Lambrix v. Singletary, 520 U.S. 518, 523-24 (1997) (noting that where "the state-law determination is sufficient to sustain the decree, any opinion . . . on the federal question would be purely advisory" (citing Herb v. Pitcairn, 324 U.S. 117, 125-26 (1945))). Put another way, federal habeas relief is not available if the state court decision rests on state law that "is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991).

With the above principles in mind, the Court examines Hubbard's Petition.

### B. Hubbard's Claims for Relief under § 2254

#### 1. *Violation of the Privilege Against Self Incrimination*

Hubbard's first assertion in support of his Petition is that he was coerced to confess at the scene of the crime, the hospital, and the Rehabilitation Institute of Chicago and did not voluntarily, knowingly, and intelligently waive his Miranda rights. This claim was presented neither on direct appeal nor on post-conviction appeal. Respondent correctly asserts that because this claim was never presented to the state court of appeals, it was not presented in one complete round of state court review and is therefore procedurally defaulted. See Byers, 610 F.3d at 985.

13

The Court cannot excuse Hubbard's procedural default of this issue; he has not demonstrated, or even asserted, cause for the default and actual prejudice therefrom, or that he is actually innocent of the crime for which he was convicted. See Smith, 598 F.3d at 382.

## 2. *Ineffective Assistance of Counsel at Trial*

Next, Hubbard contends that he was denied his constitutional right to effective assistance of counsel at trial because his counsel failed to proceed on the motion to suppress statements filed by his previous attorney. This motion sought to suppress statements Hubbard made at (1) the scene of the crime; (2) Glen Oaks Medical Center; and (3) the Rehabilitation Institute of Chicago. Motion to Suppress Statements, Illinois v. Hubbard, No. 99-2142 (Cir. Ct. DuPage Cnty. July 11, 2006). Respondent argues that the portions of the claim regarding statements made at the crime scene and at the hospital are procedurally defaulted. The Court, however, need not address this issue because Hubbard's claim clearly fails on the merits. See Johnson, 559 F.3d at 753.

"When a habeas petitioner raises an ineffective assistance claim, '[t]he bar for establishing that a state court's application of the Strickland standard was "unreasonable" is a high one, and only a clear error in applying Strickland will support a writ of habeas corpus.'" Sussman v. Jenkins, No. 09-3940, 2011 WL 1206187, at *17 (7th Cir. Apr. 1, 2011) (quoting Allen v. Chandler, 555 F.3d 596, 600 (7th Cir. 2009)). A court's review of an ineffective assistance of counsel claim is "highly deferential," "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" United States v. Holman, 314 F.3d 837, 840 (7th Cir. 2002) (quoting Strickland, 466 U.S. at 689). Additionally, Hubbard "is required to 'overcome the presumption that, under the circumstances,

14

the challenged action might be considered sound trial strategy.'" Sussman, 2011 WL 1206187, at *17 (quoting Strickland, 466 U.S. at 689). Thus, there is a strong presumption that Hubbard's counsel performed reasonably. See Strickland, 466 U.S. at 690; see also Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004).

In order to establish that his counsel was ineffective, Hubbard must show that: (1) his counsel's performance "fell below an objective standard of reasonableness"; and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Smith v. Spisak, 130 S.Ct. 676, 685 (2010) (quoting Strickland, 466 U.S. at 688, 694); see also Gentry v. Sevier, 597 F.3d 838, 851 (7th Cir. 2010). If Hubbard is "unable to make a sufficient showing on either component of the Strickland standard, we need not consider the other component." Pole v. Randolph, 570 F.3d 922, 934 (7th Cir. 2009).

The state court's application of Strickland was not unreasonable because it is not clearly erroneous; and, therefore, does not support a writ of habeas corpus. See Byers, 610 F.3d at 988; see also Sussman, 2011 WL 1206187, at *17. The Appellate Court opined:

> In his petition, [Hubbard] alleged: (1) that his trial attorneys were ineffective for failing to pursue a motion to suppress filed by his previous attorney; and (2) that his attorney on direct appeal was ineffective for arguing in that appeal only one aspect of the motion to suppress–concerning statements [Hubbard] made to Sergeant Graf at the Rehabilitation Institute–and ignoring the remaining allegations in the motion–concerning statements [he] made to police officers at the scene and at Glen Oaks Medical Center. [Hubbard] attached to his petition a copy of the motion to suppress filed by his original attorney, alleging that the statements should have been suppressed because: (1) he was in custody without being given Miranda warnings prior to being interrogated at the scene and at the hospital; (2) he was under the influence of pain medication and unable to comprehend or waive his rights prior to being interrogated at the Rehabilitation Institute; and (3) his statements while in custody were the product of coercion, promises, and threats.
> According to [Hubbard], his petition should have been docketed for further proceedings so that he could be given the opportunity to prove his statements were unknowing, involuntary, and, therefore, inadmissible, and the trial court could make

the factual and credibility findings necessary to resolve his claims. Addressing the prejudice prong of the Strickland test, [Hubbard] argues that had appellate counsel argued that trial counsel should have moved to suppress all of his statements and not just those made to Sergeant Graf, the result on appeal might have been different. Further, he contends that the result in the trial court also might have been different had all of his incriminating statements been suppressed. [Hubbard] refers to his statement to Officer Luethy at the scene that Trijuana cheated on him and said their life was over and his statements to Officers Mineo and Bell at the hospital that he intended to kill Trijuana, poured gasoline over her, and lit a match and threw it on her.

On direct appeal, this court determined that [Hubbard] had failed to establish that his trial counsel was ineffective for failing to seek suppression of the taped statements he made to Sergeant Graf. Noting that the evidence against [Hubbard] was "substantial" and that the statements were "merely cumulative" of other evidence, including [his] and Trijuana's statements to other police personnel at the scene and Studway's statements, this court concluded that [Hubbard] failed to establish that he was prejudiced (i.e., Strickland's second prong) by his counsel's failure to seek suppression of his statements to Sergeant Graf.

[Hubbard] concedes that the trial court did not err in determining that this court's decision in [his] direct appeal was res judicata against any ineffective-assistance-of-counsel claim concerning trial counsel's failure to move to suppress the statements to Sergeant Graf at the Rehabilitation Institute. However, he asserts that, in light of this court's decision on direct appeal that the statements to Sergeant Graf were cumulative of statements [he] made to Officers Luethy, Mineo, and Bell, it appears that this court's decision might have been different if appellate counsel had argued that trial counsel failed to seek suppression of the other statements as well. Accordingly, [Hubbard] requests that we remand this cause for further proceedings on his postconviction claim that all of his statements should have been suppressed.

Upon reconsideration in light of Hodges, we conclude that defendant's petition is frivolous and patently without merit. Defendant's allegations concerning suppression of all the statements specified in his motion to suppress fail to show that it is arguable that trial counsel's performance fell below an objective standard of reasonableness (i.e., Strickland's first prong) in that it constitutes an indisputably meritless legal theory because it is completely contradicted by the record. Defendant's theory at trial was that Trijuana died as a result of a suicide pact. Without the statements that defendant argues should have been suppressed, his defense theory could not have been presented. Defendant did not testify at trial. The only evidence concerning any suicide pact were various statements defendant made while at the scene, at Glen Oaks Medical Center, or at the Rehabilitation Institute of Chicago, all of which defendant argues (in contrast to his defense theory) should have been suppressed.

Hubbard II, Nos. 2-5-911 & 2-6-349 cons., at 17-20 (footnote omitted).

16

As to Strickland's first prong, the state court of appeals correctly determined that Hubbard failed to show that his trial counsel's performance fell below an objective standard of reasonableness. The state court of appeals properly noted that Hubbard's counsel at trial would not have been able to advance his defense theory at trial—that Trijuana died as a result of a suicide pact—if they had proceeded on the motion to suppress statements. The Seventh Circuit recognizes that "trial strategies are generally left to the discretion of counsel and second-guessing strategic decisions in hindsight will generally not be a meritorious basis to find ineffective assistance of counsel." Gentry, 597 F.3d at 851 (citing Smith v. Gaetz, 565 F.3d 346, 352-53 (7th Cir. 2009)); see also Kerr v. Thurmer, No. 09-1032, 2011 WL 1105622, at *3 (7th Cir. Mar. 28, 2011) ("[W]e do not as a rule second-guess counsel's strategy. Instead, judicial scrutiny of a lawyer's performance must be highly deferential, and courts assessing counsel's performance generally presume that decisions at trial fall within 'the "wide range" of reasonable professional assistance.'" (quoting Harrington v. Richter, 131 S.Ct. 770, 787 (2011))). The Court is reluctant to engage in second guessing, or "Monday morning quarterbacking," regarding counsel's strategic decisions in this case. See Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990). The Court can find no indication in the record that Hubbard's trial attorneys were "not functioning as the 'counsel' guaranteed by the Sixth Amendment." Holman, 314 F.3d at 839 (quoting Strickland, 466 U.S. at 687).

Moreover, the state court of appeals also correctly determined that Hubbard failed to establish prejudice under Strickland's second prong. The court found that the evidence against Hubbard was "substantial" and that the statements were "merely cumulative" of other evidence presented at trial. The court specifically noted evidence of Trijuana's statements to Officer Bell

17

that Hubbard had punched and choked her, poured gasoline on her, and started her on fire; and Studway's statements that she handed Hubbard the telephone while Trijuana was talking to her about another man, and that Hubbard wrote on a piece of paper that Trijuana was "going down." The court correctly concluded that Hubbard did not establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Accordingly, Hubbard cannot reasonably argue "both that his counsel's performance was deficient when measured against prevailing standards of professional reasonableness, and that the deficient performance prejudiced his defense." Ebert, 610 F.3d at 411 (citing Strickland, 466 U.S. at 689-92). Additionally, the state court decision did not involve an unreasonable determination of the facts. The Court therefore determines that Hubbard's claim of ineffective assistance at trial fails.

### 3. *The State's Use of an Inadmissable, Involuntary Confession at Trial Without Granting an Evidentiary Hearing*

Hubbard's third assertion is that the State improperly used an inadmissable, involuntary confession at trial without granting an evidentiary hearing. On direct appeal, this claim was presented neither to the state court of appeals nor to the Illinois Supreme Court. Although this issue was raised to the trial court in the post-conviction petition and to the Illinois Supreme Court in the second post-conviction PLA, Hubbard failed to present the claim to the state court of appeals. Respondent correctly asserts that because this claim was never presented to the state court of appeals, it was not presented in one complete round of state court review and is therefore procedurally defaulted. See Byers, 610 F.3d at 985. The Court cannot excuse Hubbard's procedural default of this issue; he has not demonstrated, or even asserted, cause for the default and actual prejudice therefrom, or that he is actually innocent of the crime for which he was

convicted. See Smith, 598 F.3d at 382.

### 4. *Denial of an Evidentiary Hearing on the Voluntariness of His Confession*

Hubbard's final claim is that the State denied him an evidentiary hearing on the voluntariness of his confession. Even though Hubbard presented this claim to the trial court through his post-conviction petition, he failed to present it to the state court of appeals. Again, the Court agrees with Respondent that the claim is procedurally defaulted because the issue was not raised in one complete round of state court proceedings. See Byers, 610 F.3d at 985. The Court cannot excuse Hubbard's procedural default of this issue; he has not demonstrated, or even asserted, cause for the default and actual prejudice therefrom, or that he is actually innocent of the crime for which he was convicted. See Smith, 598 F.3d at 382.

### III. CONCLUSION

For the foregoing reasons, Hubbard's Petition for Writ of Habeas Corpus – Person in State Custody is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATED: April 18, 2011